**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| RYAL DEAL AND ASSOCIATES, LLC, ) <br> and RYAN DEAL, ) <br> ) <br>      Plaintiffs, ) <br> v. ) <br> ) <br> SOUTHERN VETERINARY ) <br> PARTNERS, LLC, ) <br> ) <br>      Defendant. ) | Civil Action <br><br> File No. _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs Ryan Deal and Associates, LLC ("RDA") and Ryal Deal ("Deal") file this Complaint against Defendant Southern Veterinary Partners, LLC ("SVP" or "Defendant").

## I. PARTIES, JURISDICTION, AND VENUE

1. RDA is a Georgia limited liability company with its principal place of business at 5099 Powers Ferry Road, Atlanta, Georgia 30327 and is a citizen of Georgia.

2. Deal is a citizen of Georgia.

3. SVP is a Delaware limited liability company, authorized to conduct business in Georgia which can be served through its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

4. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

5. Venue is proper, and the Court has personal jurisdiction over Defendant because it transacts business in the Atlanta Division of the Northern District of Georgia, including the transactions giving rise to Plaintiffs' claims.

## II. FACTUAL BACKGROUND

6. On or about June 7, 2022, RDA and SVP entered into an Asset Purchase Agreement (the "Purchase Agreement") whereby SVP, as buyer, would purchase the assets of RDA's business known as "Lucky & Lady." A copy of the Purchase Agreement is attached hereto as Exhibit 1.

7. Lucky & Lady was a high-end pet boarding and grooming facility located in Atlanta, Georgia.

8. As part of the Purchase Agreement, SVP claimed it wished to open new locations of Lucky & Lady. This portion of the Purchase Agreement refers to them as "De Novo Locations."

9. As part of the Purchase Agreement, SVP agreed to pay RDA: (1) $1,600,000 in cash; (2) $400,000 in Class-A stock in SVP; (3) an earnout amount calculated based on EBITDA; and (4) a bonus for finding, developing, and building De Novo Locations (the "De Novo Bonus").

10. Depending on the number of new locations and their profitability, the De Novo Bonus was up to $1,200,000. Alternatively, if at least two new locations were

not opened by June 30, 2025, SVP agreed to pay RDA $650,000 in cash.

11. On or about June 7, 2022, SVP and Deal entered into an Employment Agreement (the "Employment Agreement") whereby Deal was to be the Director of Growth and Operations for Lucky & Lady.

12. The Purchase Agreement indicated that if Deal was terminated from his employment, SVP would no longer have to pay him the De Novo Bonus.

13. At the time SVP entered the Purchase Agreement and Employment Agreement, SVP did not intend to pay Deal the De Novo Bonus, the EBITDA earn out amounts, and his salary after it terminated him.

14. Deal reasonably relied upon SVP's false representations in the Purchase Agreement and the Employment Agreement.

15. The Employment Agreement between Deal and SVP provided that Deal was to be the Director of Growth and Operations for Lucky & Lady.

16. As the founder of Lucky & Lady, Deal had extensive knowledge of the operations and best practices of the company.

17. Shortly after the Purchase Agreement was executed, Deal began searching for space for additional Lucky & Lady locations and found several potential new locations.

18. SVP acknowledged these searches, but SVP never took additional steps to acquire any new locations for Lucky & Lady.

19. Deal had numerous communications with SVP about potential locations, and none of them came to fruition.

20. Instead of utilizing the extensive knowledge from Deal to make and train new hires, SVP staffed Lucky & Lady with new hires who were not properly trained and would not allow Deal to train them.

21. Without proper training, the facilities at Lucky & Lady became unsanitary and went into disrepair.

22. As a result of poorly trained staff and the facilities' conditions, revenue dropped.

23. Deal attempted to resolve the problems occurring at Lucky & Lady on multiple occasions.

24. Beginning in June of 2022, managers and officers of SVP began alluding to Deal as being "too old" to align with the image and vision SVP had for Lucky & Lady.

25. On June 21, 2022, Caroline Sandrew, SVP's General Manager told Deal that the company was concerned about staff retention, referring to challenges of managing the staff because they were like a "bunch of kids." Caroline then asked Deal his age and when he told her he was 48, she told him, "I don't know why they think you're too old."

26. On June 22, 2022 Deal met with Priya Singh, SVP's Director, Special

Projects. During this conversation, Priya Singh described Caroline Sandrew as "young and full of energy." When Deal asked if she was insinuating he was too old, Priya Singh responded, "We just need someone younger to manage the teammates."

27. During the months that followed, Priya Singh, Aaron Dolle, and Kamrie Jones made comments indicating a desire to hire only younger candidates for the GM role, including not only an explicit desire for "younger candidates," but also the importance of a "young person's energy" that technology was easier understood by a "younger person," and that the company focused its recruiting in places where younger candidates would look.

28. SVP ultimately hired a younger candidate in the GM position in line with its mission.

29. When Deal expressed concerns with some of the priorities at Lucky & Lady, he was told that his concerns reflected "generational" differences, an explicit reference to his age as compared to the age of the new GM.

30. Instead of working with Deal on a solution to get Lucky & Lady back on track and because SVP believed Deal was too old to continue with the company, SVP terminated Deal by sending him a severance agreement on or about June 1, 2023.

31. Included in the Severance Agreement was a waiver of any claim pursuant to the Age Discrimination in Employment Act.

32. Deal is over the age of forty (40).

## COUNT I – Fraud

33. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-32 of the Complaint as if fully repeated and restated herein.

34. Defendant made, authorized, or caused to be made numerous false representations of material fact to induce Plaintiffs to enter into the Purchase Agreement and Employment Agreement.

35. Defendant made numerous material misrepresentations or omitted facts about its intent regarding the management of Lucky & Lady and Deal's employment.

36. In addition, Defendant made numerous material misrepresentations or omitted facts about its intent regarding its intended efforts to expand of the Lucky & Lady brand, its intent to retain Deal as an employee, its intent to pay RDA the De Novo Bonus, its intent to RDA the EBITDA earn out.

37. Defendant never intended to retain Deal as an employee, to pay the De Novo Bonus, to pay the EBITDA earn out, and to use reasonable efforts to expand the Lucky & Lady brand, and Defendant misled Deal by entering the Purchase Agreement, the Employment Agreement, and by repeatedly communicating about expansion efforts without taking any action on them.

38. Defendant's material misrepresentations and omitted facts were intended to, and did, have the desired effect of enticing Plaintiffs to enter into the Purchase

Agreement and Employment Agreement.

39. Defendant knew that these statements were false when made or omitted material facts, or at the very least, it made the statements with reckless disregard for their truth.

40. Defendant knew Plaintiffs would receive and rely on such representations and intended that their false and/or misleading statements would induce Plaintiffs to enter into the Purchase Agreement and Employment Agreement.

41. Defendant's misrepresentations were material because they concerned critical information about RDA's assets, SVP's intent to pay the De Novo bonus, the EBITDA earn out, and Deal's long-term employment.

42. Plaintiffs reasonably and justifiably relied on such misrepresentations and omissions. Plaintiffs would not have entered into the Purchase Agreement and Employment Agreement had Plaintiffs known the true facts regarding the intent of Defendant.

### COUNT II – Breach of Contract

43. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-32 of the Complaint as if fully repeated and restated herein.

44. Defendant breached its contractual duties to Deal by terminating the Employment Agreement in violation of its terms.

45. As a direct and proximate result of Defendant's breach of contract, Deal has

been damaged in an amount to be proven at trial.

### COUNT III – Violation of the Age Discrimination in Employment Act

46. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-32 of the Complaint as if fully repeated and restated herein.

47. It is unlawful for any employer to discharge or otherwise discriminate against an employee in the terms and conditions of his employment because of his age.

48. Defendant SVP maintained a policy of preferring younger, more "energetic" employees to manage its operations.

49. Deal questioned and objected to this practice.

50. Despite Deal's objections, decision-makers, including Priya Singh and Aaron Dolle persisted in making age-based decisions with the intention of preferring younger workers over older workers.

51. In 2022 and 2023 SVP fostered a youth culture, which expressly preferred younger candidates for positions, and discouraged the employment of "older" workers.

52. SVP even characterized Deal's concerns about management practices as "generational" concerns.

53. Ultimately, SVP terminated Deal's employment because of his age, 48, because it is not in line with the company's youth-oriented mission.

54. SVP's decision to terminate Deal violated the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.

55. Deal exhausted all administrative prerequisites under the ADEA, including the timely filing of a charge of discrimination with the EEOC.

56. Deal's charge of discrimination has been pending with the EEOC for at least 60 days prior to the filing of this complaint.

## COUNT IV – Punitive Damages

57. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-32 of the Complaint as if fully repeated and restated herein.

58. As a result of Defendant's fraudulent misconduct, Defendant showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, in violation of O.C.G.A. § 51-12-5.1(b).

59. Punitive damages should be awarded to Plaintiffs to punish and penalize Defendant for its actions that have harmed Plaintiffs, and to deter Defendant from ever again committing such actions, in an amount to be determined by a jury at trial. O.C.G.A. § 51-12-5.1(c).

60. At all times, Defendant has acted with specific intent to harm Plaintiffs, such that an award of punitive damages by a jury at trial shall not be limited in amount. O.C.G.A. § 51-12-5.1(f).

## COUNT V – Attorneys' Fees and Expenses

61. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-32 of the Complaint as if fully repeated and restated herein.

62. Plaintiffs are entitled to recover their costs of litigation, including attorney's fees, pursuant to O.C.G.A. § 13-6-11 because Defendant has acted in bad faith, has been stubbornly litigious, and has caused Plaintiffs unnecessary trouble and expense.

**WHEREFORE**, Plaintiffs pray for judgment as follows:

(a) Judgment against Defendant on each applicable count of this Complaint;

(b) Compensatory and actual damages as a result of the Defendant's conduct;

(c) Back pay, liquidated damages, and reinstatement under the ADEA;

(d) If reinstatement is not feasible, then an award of front pay under the ADEA;

(e) Attorneys' fees and costs pursuant to O.C.G.A. § 13-6-11 and the ADEA;

(f) Punitive damages; and

(g) On each of their claims for relief, such further and other relief as the Court deems just and proper.

Respectfully submitted this 31st day of May, 2024.

/s/ Christopher W. Timmons
Christopher W. Timmons

10

Georgia Bar No.: 712659
ctimmons@knowlesgallant.com
Karen E. Bain
Georgia Bar No.: 495153
kbain@knowlesgallant.com
*Counsel for Ryan Deal and Associates, LLC*
*and Ryal Deal*

KNOWLES GALLANT TIMMONS LLC
6400 Powers Ferry Road – Suite 350
Atlanta, Georgia 30339
Telephone:   (404) 818-7332
Facsimile:    (404) 446-3759

## CERTIFICATION OF FONT AND POINT

Counsel hereby certifies that the foregoing has been prepared with one of the font and point selections approved by the Court in LR 5.1B.

Respectfully submitted this 31st day of May, 2024.

/s/ Christopher W. Timmons
Christopher W. Timmons
Georgia Bar No.: 712659
ctimmons@knowlesgallant.com
Karen E. Bain
Georgia Bar No.: 495153
kbain@knowlesgallant.com
*Counsel for Ryan Deal and Associates, LLC and Ryal Deal*

KNOWLES GALLANT TIMMONS LLC
6400 Powers Ferry Road – Suite 350
Atlanta, Georgia 30339
Telephone:  (404) 818-7332
Facsimile:  (404) 446-3759